who has come in late to this case and he was asked to be involved in this case on the very day he had rotator cuff surgery so that's why you see him not here with us today but I am sure he's going to ask a number of questions despite that. Your mind's still good is it Brooks? Don't take too much for any time for rebuttal. Your honor what we propose is that the appellants collectively reserve one minute from each of our allotted time for rebuttal so three minutes in total and the plan would be from one person on our side to be determined to address rebuttal to the extent it's necessary. The only thing I can say to you is what the immortal Judge Becker used to say, one minute, what can you say in one minute? But well if it'll be three minutes in total and just one of us will. Fine that's fine. Thank you your honor. May I begin? Sure. Your honor the court concluded the district court concluded based on a plain meaning analysis of the third prong of section 1129 of the code that it does not entitle a secured creditor with the right to credit bid at a public auction. Now in concluding that the phrase indubitable equivalent has a plain meaning the court made we believe three errors. I think what they're saying is in essence when you look at this crammed down provision of B2A that it uses the word or in terms of how you can denote fair and equitable. That is absolutely correct and your honor the district court started with that uncontroversial proposition that it does set forth in the disjunctive three different ways to cram down a secured creditor and we certainly don't disagree with that but your honor this court and statutory construction is a holistic endeavor. Mr. Qureshi does that mean then or do you concede that from an analytical standpoint we should begin our statutory interpretation here with 1129? Your honor I do believe that 1129 is a starting point however this was the debtors motion on a motion to approve bid procedures. Section 1129 of the bankruptcy code is the section that deals with plan confirmation. The result of that your honor is that we think it was error for the court to rely exclusively on section 1129. There are other provisions of the bankruptcy code that provide procedural protections to secured creditors during the pendency of the case. Those include section 1111 B and section 363 which the district court disregarded. But you didn't make the 1111 B election correct? We did not in fact your honor under the clear terms of 1111 B itself we did not have that option. What 1111 B says is that when a debtor elects to sell the secured creditors collateral whether pursuant to a plan of reorganization or outside of a plan we do not have the ability to make that 1111 B election. So what does it mean to take a holistic view of the bankruptcy code? Well your honor we think that the starting point for the district court was the correct one here which was to start with the third prong of indubitable equivalent which is what the debtors were moving under. However the very word indubitable equivalent we don't think is susceptible to a plain meaning and indeed Judge Rebrano in his opinion referred to the very vagueness of that phrase. And so having conceded in effect that that phrase is vague the proper next step in statutory construction would have been to go to the second prong of 1129 which specifically addresses these. It's interesting that a hallmark of many opinions of learned hand were words that we weren't normally used to hearing and you almost wonder if this wasn't one of those examples of just showing his learned experience. Indeed which is precisely why it's just not susceptible to a plain meaning. But nonetheless it made it into the 78 code. It did indeed make it into the code and we think your honor that the only way to interpret what indubitable equivalent actually means is to interpret that language in the context of the code as a whole. So the next stop should have been the second prong of 1129 which as I said specifically addresses these. The legislative history, why do you go to the second prong? Why is that your next stop? Well because first of all it is part of the same section that the district court relied on for its opinion but your honor I think... The sections are disjunctive. You don't disagree that the sections in 1129 are disjunctive. I don't disagree that the sections are disjunctive. However your honor I think the error that the district court made was to conclude that what that disjunctive presents is a choice to the debtor to proceed as it wishes. The correct approach your honor should be to look at the treatment that is being provided to the secured creditor and on that basis determine which of the three disjunctive alternatives of 1129 properly apply to that circumstance. Here there is an alternative that very specifically addresses precisely what the debtors were proposing to do here and that was the second prong. And so we think it was error to completely disregard that prong. Now Mr. Qureshi, one difficulty I have had in trying to understand application of a holistic approach here is the import of section 1111. Can you help me with that? I certainly can your honor. The import is that the bankruptcy code provides two procedural protections to secured creditors to prevent secured creditors from being cashed out of their position at what they believe to be an unfairly low valuation. One of those is section 363 and the other is section 1111. Now your honor what section 1111 does is it allows a secured creditor to elect to have their claim treated as fully secured. So that as an example if I have a face amount of a loan that's $100 but the present value of the collateral securing that loan is $50, I can make as a secured creditor an election under 1111 be to have the full amount of my claim all $100 treated as fully secured. And this your honor leads to the error the court made in disregarding the legislative history and that is that... The legislative history of 1111? The legislative history of 1111. How does the legislative history of 1111 help us to understand the meaning of 1129? Your honor it helps in this way. First of all the drafters of the code specifically said that when looking at 1129 it is instructive to also consider section 1111 but the reason it is so critical to look at that history your honor is that 1111 be on its face takes away the ability to make the election in a sale context. The statute does not say on its being taken away. That is something that is made abundantly and crystally clear in the legislative history what that history is. But you are assuming of course that then the 1129 B2A is ambiguous because we have no really no ability no authority to consider the legislative history at all much less the legislative history of 1111 unless there's ambiguity here in the other section correct? That is correct as your honor ruled earlier this year in the Coffman v. Allstate decision when the plain meaning of a specific provision cannot be derived the provision has to be interpreted in the context of the statute as a whole. We start from the proposition that the provision the district court relied on the third prong the indubitable equivalent prong is not susceptible to a plain meaning. If you can't make you cannot make an 1111 B election if there's a sale is that correct? That is correct. So then you go to the particular provision and that particular provision your opponent will argue is in the disjunctive. So you're saying look I have two protections. I lose one therefore I must get the other but when you go to that particular provision what necessarily leads us to conclude that you must get the other? Well your honor, credit bidding in this case. We think that the and the legislative history clearly spells this out that we must have one or the other protection either credit bidding or the ability to make that election. But even 363 K allows the court to deny a secured credit or credit bid. That is absolutely right. 363 K has a four cause exception. That is correct your honor and that is simply not at issue here. There has been no case that we are aware of that suggests that the inability to credit bid because it might chill bidding at an auction or any such argument falls within the four cause exception. The four cause exception case law under 363 is really meant to address situations where there has been some sort of inequitable conduct by the secured lenders. So again that's not at issue here. But yes that is a safeguard to build into it. But your honor we start from the proposition that because the code is so clear that secured creditors must have one or the other protection, one then gets back to 1129. The starting point for interpreting 1129 is not that the debtor can choose which section to proceed under. It's that one must instead look at what is the proposed treatment that the debtor is giving to secured lenders. If that treatment is selling collateral pursuant to a sale in the context of a plan, then the second prong must apply. I see my light is red unless the court has any other questions I will turn it over to Mr. Putnam. Thank you very much. Good morning. Alfred Putnam for Citizens Bank. You're not going to start with footnote 16 are you? I'm actually I'm going to get to footnote 16. Yes I am. But I if you're going to quote Fowler at least you quoted the second edition. You could have gone to the Holy Grail the first edition. I could have. I did not quote the third edition. Thank goodness you didn't quote the third edition. Although I think I'm just off top my head you put it as 1968. Isn't the second edition in 65? Mine said 68. Now it may have been an English production. I'll go look. If I'm wrong I'm going to be. But actually to draw the distinction I think a little bit between what we're arguing here. It's true that if you conclude that the statute could be there are two reasonable readings to the statute. And if there are two reasonable readings there's an ambiguity. You go consult legislative history. I think everybody agrees with that. And I think my colleagues are suggesting that there are two reasonable readings. And I don't necessarily want to fight with them except for their reading is it's not implausible isn't it? Is it? Very. What you say. Actually that's what I'm here to suggest to you. I'm here to suggest that in fact the only correct proper reading under the rules of statutory construction and actually on the way it's written is the reading of the bankruptcy court and not the reading of the district court. I mean so maybe that that's the correct reading but their reading of it isn't impossible is it? Their reading. I mean and actually it may play in. This may be a softball question because it may mean that you then go to candidates of construction. You then go to legislative history. You then go to the holistic looking at other provisions of the code and how they relate. I think that's right. But I think. And so if you come to the conclusion that their reading is not impossible just because it's the disjunctive we ought to go do these things. But I think you have to stop first and say before you get there is it in fact a reasonable reading. And by that I mean the debtors reading. And I respectfully suggest to you that when in fact you have a very specific clause that said that covers sales of property subject to the liens to be sold free and clear of the liens and includes a clause in there that of that this subsection of the statute to say yes but there is another option available and the option available is a sale of any property subject to the liens free and clear of those liens but not subject to 363k. And that's what I'm advancing to you and that's what the debtors are advancing. What fits within 1129 B2A 3 paragraph 3 the indubitable equivalent paragraph? I think that is there for the swap of collateral is what I'd say as opposed to a sale. In other words I think the first just in a very general sense a little Roman one. So you need a replacement lien situation? Yeah the first one is that is right. I'm sorry. The first one is if you're trying to stretch out but you're leaving the liens in place. The second one is if you're selling the property but you want to sell it free and clear of such liens and Congress has put something in there in order to provide the protection as Mr. Koreshi suggests there's a reason for that and the whole code balances but I'm going to stay away from the whole code. He's already made that argument. And the third is a catch-all. I agree that it's there but it's there if in fact the first or the second are not neither one of those two things are proposed. There's no mention of a sale of property free and clear. But why can't cash be the indubitable equivalent? Well actually property here. It is conceivable that cash and property will add up to whatever it adds up to. But what the under this court's opinion in submicron cash without credit bidding isn't going to be the indubitable equivalent because the credit bidding is going to set the fair market value. The curious thing is that's what the court already said as a rationale as to why a simple cash bid without credit bidding isn't going to... Aren't you a step ahead here? I mean the sale goes forward. Let's assume the sale goes forward and there's no credit bidding and there's a sum of money realized. Let's assume there's only one bidder and it's a stocking horse bidder whose bid is there. You still have the opportunity at plan approval to make a determination as to whether or not the amount of cash and property was the indubitable equivalent. Do you not? It's fair and equitable. I would argue that in fact that there's no point in doing that because it cannot be. But yes this... Why? Why? Why is that as Judge Fisher's question clearly suggests always an option here an ultimate option? I don't understand. Well I argue that it's foreclosed by the statutory language but in this particular instance if you go ahead with the credit bid I mean it's your question Judge Fisher goes to the temporal aspect. You can do this and decide it all later which is what I think Judge Rabrino was suggesting he might decide it all later. But the fact of the matter is if you conclude when you get to the end of the day that that proposition simply doesn't work. That this is a motion to come forward to approve the bidding procedures. It's been teed up for that purpose. You go through this proposition and in point of fact the proposed credit bid non-credit bid option is giving us less than what we are entitled to under the statute. So that cannot be the indubitable equivalent of what I would have. It's not a substitution of my rights. All right so what's wrong what's wrong with that process? Well we are here in fact you know you could make the argument it's not been made here but we are here on perhaps a matter that's premature. The issue was the credit bid process. There are some who I don't know who would have argued it but before the district court there was some question as to jurisdiction. Okay now clearly we have jurisdiction because we're reviewing what the district court did. But some could argue that this whole process of us looking at this bid procedure is really premature in the scope of this bankruptcy. I respectfully differ. I think that you have had the jurisdiction to look at it. We do now. Yes and if you allow it to go forward allow the expense of all of that at the end of the day with a clear understanding that in fact it can never measure up. Because it's giving the security creditors less than they are entitled to under the statute. And so it's not going to their definition of what it's going to be is to say the cash that's going to be available in an auction without credit bidding could be the indubitable equivalent. But in fact if I'm entitled to the credit bid as the hypo that you used in the submicron case goes the real market value includes that credit bid. You've dealt that out so it can't possibly be the indubitable equivalent. I'd also like to make one point because the commas basically submicron is you know what does it mean to credit bid. Yes I think that's right. But the question here is credit bidding even allowed in the door under the way it's been under the plan that will be proposed for the auctionist and the bid procedures that are proposed by the debtor. I'm not going to argue with your honor about what submicron says because I think that would be a losing argument. But I respectfully suggest that if you although back in the 70s the Tony Amsterdam who used to argue a lot of the death penalty cases I think he was a pen at the time. He one time stood up before the Supreme Court and said here's what you said. Here's what you meant to say. And here's how others have interpreted it. And they actually listen. I think I think the hypo your honor used would apply equally here. And if I may just briefly Mr. Putnam. May I return please to the repartee that you had with Judge Ambrose at the beginning of your argument because I don't want to make any assumptions about footnote 16 that might be inaccurate. I suppose one could first assume that because the comma argument was relegated to a part of your position perhaps that it's a make weight. But I happened to be somewhat taken by the argument. I don't mean to get persuaded but I did think that it was an argument worthy of some further explication here regardless of whether we pursue Judge Ambrose preferred authority or whatever edition of it it happens to be or mine which is based on my childhood reading of E.B. White. But surely there is some reason for Congress use of these commas. What of that argument as it appears albeit relegated to footnote 16. Well I'm sorry that I was obliged to relegate it to footnote 16. I think the argument is quite serious. And I thought I said to Judge Ambrose I think it's quite serious. The fact is that that clause subject to Section 363 K of this title is what in essence is being deleted here. They're proposing something and they say well I'm going to do it not subject to Section 363 K. If you're going to make that argument you have to say that little Roman 2 then applies only to sales that are subject to 363 K that other sales are possible but they're not subject to 363 K. If that's right that's a defining clause. It's a restrictive clause. Those commas shouldn't be there. The commas are there. And the reason the commas are there I would argue is that in point of fact it's a non-restrictive clause. And that's in fact they're talking about sales of property subject to the liens free and clear of such liens. That applies to all such sales. And this is a non-restrictive clause put in commas. It's the same distinction that would have applied if it was a which or a that. I'm not going to go into that. There's even more because a which and a that are not there. But if you take those commas out then I think Mr. McMichael could argue that in point of fact that's what it reads. It's only it's defining in that sense. But the commas are there. So you have to come up with an answer I respectfully submit as to why they're there. And I understand Mr. McMichael in footnote 12 to have come up with the answer that in point of fact doesn't really matter. So the commas are wrong. I'll turn to that in a minute. But the alternative answer is that while 363 K refers to sales of pursuant to 360 B, 363 B and that couldn't possibly apply. But that argument would apply all together. 363 K shouldn't be in the statute this portion of the statute at all. And let me then return to the return to the central point which is if you if you take if the commas are decisive am I really arguing to you that punctuation in fact controls. I actually don't think that in every case punctuation can be said to control. But I do think it can be said to matter. And when you are in a case when in point of fact the district judge has taken the position that it's clear on its face and that no other interpretation is possible and that the argument that Mr. Qureshi is putting forward is not plausible. If it turns out that in point of fact the commas suggest that Mr. Qureshi is right then at least you ought to give him the benefit of saying I'm making a plausible argument here because I'm arguing that Congress did know how to punctuate. Mr. McMichael's arguing that it doesn't really matter that they might get it wrong. I don't think they got it wrong here. Thank you very much. Mr. Logan. Thank you Your Honor. Ben Logan of the Melbourne and Myers LLP on behalf of the official creditors committee. Let me ask you at the outset where is it in the opinion that there's an actual finding made by Judge Ruslevich with regard to the motivation for the proposal that you not have credit bidding. Well Your Honor judge where in his opinion. Yeah I mean I'm looking for example on page 21 he says lenders maintain that the sole motivation lenders argue. Then it says the court is constrained to observe that the little that points to a different conclusion. Well that's that's comment and somewhat the same thing on the next page that is explanation is unpersuasive. But where is there an actual finding. Well Your Honor. The next paragraph he says giving the debtors the benefit of the doubt as to their motives. The court nevertheless can discern no plausible business justification for the restriction. Excuse me for clarification. Are we at page 21 of the opinion or page 21 of the appendix. Page 22 of the opinion Your Honor. And I think it was on page 21. Yeah. It's not 21 or 22. Yes. Thank you. I think elsewhere right at the outset. But basically what he's again that's a comment. I can't discern any plausible business justification for the restriction which the debtors seek to include in the bid procedures. But I'm not sure that's I'm not sure that's a finding. Well Your Honor. He says it in various places. Page 19 he says to put it differently it appears to this court that the facts before it represent the case where the right to tender a credit bid should be imperative should be be an imperative. Later on he says in the next paragraph he goes on to say that the court rejects the debtor's contention etc. Then he goes on to say even if it were otherwise however it is far too clear that it would be appropriate for the court to approve such a tactic as a legitimate exercise of the debtor's business judgment. Bankruptcy courts typically accord a degree of deference to decisions by a debtor in possession. This is not however without limit. And he goes on. He goes on to describe the various facts that lead him to conclude that this is not the case where the debtor should be afforded the right for him to credit bidding. And Your Honor that brings me back to what I wanted to start with which was this was a motion filed before Judge Roslovich. In order for it to be sustained it had to establish that as a matter of law in fact that there should be a prohibition on credit bidding. It was not seeking an advisory opinion. It would be inappropriate to seek an advisory opinion on whether or not it's theoretically possible for some plan of reorganization or some set of facts to disapprove of credit. In effect are you saying that the presumption goes your way unless for cause shown under 363 K the credit bidding is taken away. I'd say it's slightly differently Your Honor. Although one could either get to that point under 363 K or under indubitable equivalent or under fair and equitable. After all all the subdivisions 11 29 B 2 A require that a plan be fair and equitable. How do you get to that end point by talking about indubitable equivalence or indubitable equivalent. How do you do. How do you get there. Your Honor because I think all of them and in all the case law on asset sales and indeed the debtors moving papers. Judge Roslovich's questions during the during the hearing on October 1st all start from the premise that a plan any sale must be fair. And so debtors argued in their moving papers and they argued before Judge Roslovich or Judge Roslovich to put his imprimatur on these bid procedures. They must establish that as a matter of their business judgment it was appropriate to disallow credit bidding. We argued that that was not the right test because this was an insider transaction. The appropriate test was a heightened degree of scrutiny which Judge Roslovich also agreed with in his opinion. And that brought into play a number of factual issues. Factual issues such as whether or not this really was an insider transaction. Something that the debtors quite frankly waffle on. They waffle on occasionally although during the oral argument on October 1st Mr. McMichael admitted that this was an insider transaction. During various cross-examination questions of Mr. Baker it came out crystal clear that this was a very much an insider transaction that Mr. Baker largely held the equity in the existing debtor. Basically it's a new value plan dressed up. Beyond that they have to establish that it's a fair process. Judge Roslovich questioned the debtors at length about the PR campaign that they launched at the outset of filing their plan. There was evidence presented on that but beyond that Mr. McMichael made a statement. This was all in response to Mr. McMichael's argument. It was a proper exercise of their business judgment to prohibit credit bidding because he argued that would chill the bidding process. Judge Roslovich asked Mr. McMichael a series of questions about how that could chill the rationale given by the debtor. But I don't see where he's actually made a finding of fact. And he's basically saying I don't find what you say to be persuasive. And he leaves it at that. But that's a statement of faith to say that's a finding of fact. Your Honor, he does say in two places that this is an insider transaction. Towards the end of his opinion. Oh, I understand that. He calls it a manifest insider transaction. And he concludes that once it's an insider transaction the business judgment rule, which is what the debtors argued, is inapplicable. And they must establish as a matter of fact... But the implication of what you're saying is that he made a finding of fact in effect of bad faith and therefore they should not be able to, and maybe it's just an alternative holding, that they cannot attempt to go forward by barring, to bar credit bidding. Your Honor, I wouldn't quite call it bad faith. But I think what he concluded was that because it's an insider transaction coupled with a campaign to dissuade any other competitive bets, he said... Yeah, and I wouldn't call it that either. I don't think he even... I don't think those words were ever used or even implied in the opinion. He just didn't... he doesn't buy their reasoning. What words were never... I don't... bad... he doesn't use the words bad faith. I'm just saying he doesn't buy their reasoning. That's right. And I wouldn't use... So, Mr. Logan, Mr. Logan, would you help me explain how the business judgment rule plays out in this case and why, from your standpoint, it's necessary for us to rule on it at this time? Your Honor, I think that gets back to two points. One is for the debtors to prevail in their motion. They had to sustain their burden, and it's a very substantial burden. As courts in most circuits, I don't think the Third Circuit has addressed this yet, but if they brought it under 1129, they have the burden of establishing every element of confirmation of a plan. It's either by clear and convincing evidence or by preponderance of the evidence. There's a split of authority on that, but they clearly have the burden. They've decided to tee up a confirmation issue prior to the confirmation hearing, much like in Owens Corning, the debtors filed a motion for substantive consolidation before the confirmation hearing. Once they did that, it's their burden, as a matter of fact, and law, to establish that Judge Russovich should have approved their motion. But why can't it wait? Returning to the inquiry pursued earlier, why can't this issue be one that is adjudicated at the confirmation hearing? Two reasons, Your Honor. First off, if they are going to defer that determination until the confirmation hearing, they haven't sustained their burden to approve the motion. Second thing, the reason that these issues are typically brought up by motion is that that would lead to an auction process that would be, frankly, unmanageable. When bidders submit their bids, display what they're willing to pay for the assets, and then we revisit the rules after the fact, it is pure chaos. That is why I think it was appropriate for the debtors to bring this as a motion to be heard before the confirmation hearing. So in economic terms, you're suggesting that this would result in some kind of distortion of this mini-market by permitting this to wait? Yes, Your Honor. I think it would, and I think it would also establish that if you conclude that it ought to wait, you also ought to conclude that the debtors did not sustain their burden in bringing the motion. My red light's on. Any further questions? Thank you very much. Mr. McMichael. Do you want to just take the mic and just put it up? Thank you. That'll work. May it please the Court, I'm Lawrence McMichael. I represent the appellees in this case and the debtors below Philadelphia Newspapers LLC. The only issue – It looks at the outset, just in getting this matter before us, that this is a case of a lot of bad blood and some real hardball being played here. If you take a look at the statute, at least in the past, prior to the Pacific Lumber opinion of the Fifth Circuit, written by a very reputable judge, I can see, extremely reputable, and also the crime he may place, almost all of the cases have pretty much said that if you wish to sell assets free and clear, you've got to look at 1129B2A, two little I's. Isn't that correct? In different contexts, different courts have said that, different bankruptcy courts have said that. No court has specifically addressed the issue, other than the cases that Your Honor mentioned, crime he may and Pacific Lumber. In this case, no court has specifically addressed the issue of how sub-3 plays into that equation. To what does sub-3 apply normally? It applies – here's what sub-3 means. I think that we need to start with what the statute is intended to do. The guiding principle that this court ought to look to comes from many, many cases. It's in the Supreme Court opinion in Valdisco that Congress crafted Chapter 11 to be a flexible tool to allow debtors to craft a plan that was specific to their business, to their industry, to their environment, and to their time. It's supposed to be flexible. It created three alternative paths to confirm a plan over the descent of secured creditors, any one of which would allow you to get there. Over the – yeah, it could be secured creditors. That's correct in this case. Right. Okay. So let's look at those three alternatives. Alternative 1 and Alternative 2 define a structure. They define a type of deal. They don't require – They define a sale subject to a lien, a sale free of a lien, and something called indubitable equivalent, which, according to the congressional record, and I assume that was put in there by Professor Klee on behalf of Representative Edwards, usually it's for abandonment or a replacement lien. Your Honor, I disagree with that. I think that that – I think if you look at the structure, what Congress did – is there anything in the congressional record or Klee's article that came out shortly after that that disputes what I just said? Several things. First of all, in the congressional record, there are repeated references to the fact that these are disjunctive requirements and that the court shall confirm the plan if any one of them is met. Secondly, in Klee's article, if you look at the end of Klee's article, he said, we didn't even think about what would happen if some of the collateral was sold but not all of it, which is exactly what we're doing here. So Klee's article doesn't really quite get you there either. What Congress did, keeping the flexibility principle in mind, what Congress did was say you can create a specific path to confirmation by going through – Klee's article says in footnote 143, a sale of collateral must be made under section 363K, which permits the lien holders to bid for the collateral and offset their allowed claims that are secured by the collateral against the purchase price. This includes both the secure claim and the unsecured claim. It does say that. It does say that. But if you look at the end of the article, there's a provision where he says we didn't consider what would happen if part of the collateral was sold and part wasn't sold. And in the congressional record, what he has is – it's interesting. He has one, two, three, four paragraphs that explain Clause 1, that is, a sale subject to the lien. He has one, two, three, at least three paragraphs that explain Clause 3. And he says Clause 2 is self-explanatory. That's all it says, one sentence. And so why shouldn't we adopt what your opponents say and say, look, any time that you specifically have the sale free and clear, you have to look to the specific provision? Because that's not what the statute says and that's not what Congress intended. Congress crafted two ways to structure a deal, looking at the deal structure, not the result. One is not necessarily a sale. One is retain the asset, give them their liens, give them a cash flow stream. Two is sell the asset, give them a credit bid right. Three doesn't look at the means. Three looks at the result. And three is actually more specific than one and two. But if you've got, for three, the congressional record saying abandonment of the collateral to the creditor would clearly satisfy indubitable equivalence, as would a lien on similar collateral. It looks as if we don't have a whole lot, but the little bit we do have appears to be at least a directional arrow saying, in effect, what's on page 26 of the citizen's bank brief, which is that when you have the specific, that comes in, that rules. That's what you deal with. Only if there's a conflict. And there's no conflict here. Because sub three looks at the result. It's the highest burden that a debtor has to confirmation. We have to show that the result of the process yields the indubitable equivalent of the secured claim. We don't have to show that under one. We don't have to show that under two. You, despite the fact that you're talking about a particular, you're saying the statute is clear on its face. We don't have to look at canons of construction. We don't have to look at the holistic approach. We don't have to look at congressional history or legislative history. And yet you do use a canon that the expressio unios exclusio alterius to express one is to exclude the others. Can't you flip that and just say here to express in two lies what you do when you want to sell free and clear is to exclude anything else with respect to the sale of an asset free and clear? No. You can't. It doesn't work in reverse. The reason why it doesn't work in reverse is because it's contrary to what Congress tried to do when it created three. Three looks at the result of the process. There are several cases that actually bear upon this. There's some case law out here which I think will be helpful to the court. Some of the side, I think all of the side of the arbitrage. But if you go back to a decision by Judge Padova in the district court here 10 years ago, there was a case where the debtor wasn't selling anything. The debtor was keeping the asset, keeping liens in place, giving a cash flow stream, but he wasn't giving the liens, he wasn't keeping all of the liens in place. What Judge Padova says, okay, your plan structure looks like sub one, but it doesn't quite get there because you're not giving the lender all of the liens they had pre-quotation. But you can still confirm under sub three. You can go to sub three because if you can provide the indubitable equivalent, that's an alternate path, and it provides flexibility in the debtor being able to structure a plan that meets its specific circumstances. If one were to do what your honor suggested, you would be eliminating that flexibility from sub three, which Congress absolutely intended. Right in Bill Dishman. Counsel, let me return you to words you used a few moments ago, and probably some of your subsequent comments have been intended to explain this, but I'm still having some difficulty with sub three. And you said a few moments ago, sub three is actually more specific. Can you help me with that? Because I've had some difficulty seeing it that way. Just what does indubitable equivalent even mean? Okay, what it means is exactly what the words say. The way to look at it is to look at the result of the plan process, not the means. Sub one and sub two define means. Sub three defines the result. And what it means is that the result of the plan must yield to the secured creditor a value that is, without doubt, equal or greater than. Let me stop you right there, then. The means is value. I mean, in economic terms, the means, this is all about value. Is that what you're saying? Sub three is all about value. Sub one and sub two are not about value. You don't need to show value. Sub three is all about value. And what we have to show in sub three is that the plan results in a value to the secured creditors that is equal to or greater than the amount of the secured claim. That's precisely what it means. And, by the way, that answers the question posed by Mr. Qureshi, the question being, why would Congress have taken away an 1111B election here if we don't get the credit bid? We must have one or the other. Well, that's not necessarily true because if a secured claim is satisfied in full, in cash, on the effective date, that is a pretty powerful protection. And Congress could well have said and thought, and the language is completely consistent with this. In fact, it's the only reasonable reading of the language that if you're getting the indubitable equivalent, you're really not entitled to anything else. If the debtor can meet that high threshold, which is a threshold we've created for ourselves in this case, if we can meet that threshold, the secured creditors really aren't entitled to anything else. But Mr. Qureshi also argues that those mere terms by themselves are ambiguous, indubitable equivalent. They're not. Why are they not? They're not because an indubitable equivalent means equal to or greater than. That's not ambiguous. And indubitable means generally without doubt or with little doubt. I don't think it's ambiguous at all. If we can establish as a matter of fact at the confirmation hearing that the secured claim is worth a number, whatever the number is. At what juncture? On the effective date of the plan, as of the effective date of the plan, which is where everything is measured. Just like in Pacific Lumber, there was a judicial evaluation there, and perhaps there will be one here too. And we haven't quite decided what we're doing at confirmation. We'll see what happens at the auction. But our burden is to value the claim, value the secured claim, and then to show that without doubt the cash that we give them on the effective date is equal to or greater than that claim. If we can satisfy that, we've provided all the protection that Congress intended. And that's what indubitable equivalent means. It's a straightforward reading of it. Now, it is a mistake by the appellants to confuse ambiguity with breadth. The fact is that indubitable equivalent does not dictate a particular form of transaction. Sub one and sub two dictate form. You read it one way, and it may be plausible. They argue it's not correct. And they read it another way that also is plausible, and it may not be correct. So why not then look at legislative history? Why not look at how the other provisions of the code come into play and affect the holistic approach? Why not? Well, we have no problem with the holistic approach. I'm all in favor of looking at the code as a whole. And if you do that, you'll reach the conclusion that we have reached. Let me walk you through that if I may. Go ahead. No, go ahead. I'll come back. The starting point is Section 363, which creates a credit bid right for sales under Section B of 363. That's what it says. That's what K says. It says under B you have a credit bid right. Look at the very next subsection of 363, 363L, something that no one's mentioned yet. Because 363L is a provision that deals with ipso facto clauses. And what it says is 363L applies to sales under Sub B, to sales under Sub C, and to sales under plans under Chapter 11, 12, and 13. If Congress intended the credit bid right in K to apply to sales under plan sales, 11, 12, and 13, it would simply have used the exact same language it used in the very next subsection. But when you have a sale free and clear, you have a specific reference to 363K. What it appears to be is that you can get rid of sections of credit bidding under 363K if you show cause. The ball is in your court. The presumption, the arrow goes their way unless you can somehow turn it around. And what you are attempting to do, it would seem, here is take that away merely by proposing it and saying we're fitting it under another provision, not 1129B2A2. We're fitting it under 1129B2A3 precisely because under 3 they get the indubitable equivalent, and that's better protection than credit bidding. But if they don't have the 1111B election, they're precluded from that when it's a sale under a plan. They still should, it looks, one could argue, that what's being done is making it clear that if you're going to sell my collateral free and clear, the other protection that I do get, which is credit bidding, stays. And the only way it doesn't stay is if for some reason you show cause that it shouldn't be that way. That's not what Congress said. That's not what the statute says. Let me give you an example. Let's use a truck. Well, tell me why you don't think that works. Okay, here's why it doesn't work. Let's say a debtor has two trucks, a more valuable one and a less valuable one. Lean is on the less valuable truck. The more valuable truck is free and clear. The debtor wants to sell the less valuable truck in a planned sale. Does not want to give a credit bid right because it wants the cash. It needs the cash to fund its plan. It's not going to give a lean on proceeds. It's not going to give a credit bid right, but it's going to sell the truck, and it's going to sell it free and clear under the plan. Under the rationale that Your Honor articulated, which basically says that credit bidding is always required under sub 3 if there's a sale in anywhere in the process. No, that credit bidding when you sell a property that is subject to a lean free and clear, you don't look to sub 3 because the express provision is sub 2. But sub 2, even that allows you, by reference to 363K, to prevail and to bar credit bidding if you can show cause. That's one alternative, but the other alternative is to provide the indubitable equivalent. Because my example is suppose we sell the truck, the less valuable truck. Wouldn't it be easier here if you just attempted to show cause? We could, but that's a confirmation. That's a factual issue. That wasn't teed up. The only thing that was teed up was the legal question whether we can get to the gate or not. We haven't yet had a trial on anything, but no evidence, no testimony, no record has been made on any of this. And we have very sound reason for doing what we're doing, and I don't want to go into them because they're not a matter of record. The rest of the court is interested, but we intend to. I'm actually interested in something from a practical standpoint, and I did not mean it by any means to turn from the overriding statutory interpretation question to questions that loom here. But it's probably not a good thing for a judge to admit to ignorance, so I guess I'll call it agnosticism. But as my colleagues know, I was not a bankruptcy practitioner, and I'm curious as to the import of permitting and not permitting credit bidding to go on in an auction, let's say in an auction in the abstract. From a microeconomic standpoint, what's the import of permitting credit bidding on this small market itself as opposed to not permitting? What we will show at the confirmation hearing is that the debtors need fresh capital, that fresh capital is best obtained in the marketplace for print media, which is a troubled industry. This is a newspaper, and it's hard to attract capital to newspapers these days. Putting credit bidding in front of potential bidders scares them away. Now, that's a question of fact. That's an issue of fact, and we will show that at the confirmation hearing. Would that matter of fact apply in just about any market other than the print media market that is specific to this case? No, not necessarily. There are actually some academic literature on this, Judge. Some of it is referenced in actually Judge Ress-Lavage's opinion. Some of it is referenced in the article that was submitted by the appellants as a 28-J authority by Professor Brubaker, where you have lenders who are interested in owning the asset. Sometimes these are called loan-to-own transactions, but they can be much broader than that, and we have lenders like that in this case. We have funds that are interested in owning this asset. This loan was made in what, in 06? The loan was made in 06. And, I mean, do you really – was there any inkling that you have that you think you could show that the loan made in 06 was somehow made with the idea in mind that if this didn't work, there would be a loan-to-own situation here? None whatsoever. Okay. Well, then it seems like even if that were the case, it's an argument you probably should address to Congress, but not us. No, no. The debt is traded. There's been a lot of trading in this debt, and the holders of the debt today, some of them, not all, are in that business and would like to be in that business. That's a matter of proof at the confirmation hearing. That's why we believe it is sound to allow them to bid. I mean, we're not trying to prevent anybody from bidding. If they want to bid, they can bid. But there's nothing unfair about putting everybody on the same footing. That will bring more bidders to the table and result in a better price. One of the big problems I have is that it appears that your argument is that Congress was really just attempting to legislate a tiny slice of sales free of liens in two. It didn't mean all sales. It just meant a little slice of sales. And you can have a sale free of liens elsewhere, even though, obviously, it doesn't fit in one because that's a sale subject to a lien. But somehow you're saying it fits within three when at least some people thought for quite some time, I mean, darn close to three decades, that three, maybe it's not a catch-all, but maybe it is. It picks up those things that aren't covered expressly. How is it that Congress, you believe Congress was attempting, when it said sales free and clear of liens, you get credit bidding, that only meant to do a tiny slice of free and clear sales? The perfect start for my conclusion. I have 13 seconds and I'll try to get it done. We'll give you some more time. The answer is we are not arguing that by enacting sub two, Congress was only picking out certain sales. What it was doing is it said if the debtor ‑‑ Linda, why don't you add about five more minutes, please? Thank you, Your Honor. What Congress was saying there is if the debtor chooses to structure its plan under sub two, then all it needs to do is sell the asset, give them a credit bid right, and give them a lien on proceeds. You do those three things, you can confirm a plan under sub two. That's all you have to do. If you can't do that, you can always go to sub three and propose a different structure, as long as the result of the structure is indubitable equivalence, which, as I said, a higher and actually more specific standard. Because under sub one and sub two, we don't need to show indubitable equivalence. The 10th Circuit held that 10 years ago in Wade versus Bradford in 1994. What's the evidence supporting that Congress meant to only deal with a segment in Two Little Lies of sales free and clear? It didn't. It intended to deal with any plan that the debtor proposes that it wants to confirm under Two Little Lies. That's what Two Little Lies, any plan. The lead-in to 1129B2A talks about fair and equitable, but it also talks about not discriminating. If you have a right under 1111B that's taken away, if you have a planned sale, and the only thing left is credit bidding, might there not be an argument that this would be discriminating against secured lenders? No, because it's not the only thing that's left. The other thing that's left is indubitable equivalence. That means something. It's a very important provision because it focuses on the result. Let's look at how you apply these statutes. If you look at the lead-in to 1129B2A, it says the plan provides. So this is keyed on how the debtor determines the structure, its plan. We're within our exclusivity period. This plan was proposed within our exclusivity period.  So if we propose a plan that goes under – You're saying something a little different. I think it's more nuanced. You're saying that I, the debtor, get to choose the prong of 1129B2A we go under when the plain text of the law seems to tell you which prong applies. That's exactly what I'm saying. The plain text doesn't say that. The plain text triggers which prong based on what the plan provides. The debtor chooses. If the plan provides the indubitable equivalent, we say we're going to provide the indubitable equivalent, and that's what we're going to do. And that's what our plan provides. But how can you pick something that overrides what the text of the statute says? It doesn't override the text. The reason why it doesn't override the text and the key to congressional intent is exactly what Judge Rob Reno did below. You look at what the statute says. The statute uses the word or. It's plainly disjunctive. It's one, two, or three. That means if we can use three, we can use three. And if the plan provides indubitable equivalents, then we have the right to go to confirmation regardless of the structure of that plan. Mr. McMichael, one other practical question. Why wasn't Judge Raslavich in the best position to evaluate what should apply here at the time of your motion? And when he determined that this plan should proceed with credit bidding, why wasn't he in the better position between the two courts? The reason is because the issue of credit bidding was posed to Judge Raslavich by agreement of the parties as a question of law. There's a threshold issue whether we could do under the statute what we were proposing to do. If not raised in the context of a bid procedures motion, it could have been raised in the disclosure statement hearing. Either way, the issue can be teed up. It's a perfectly proper thing to do, and no one is suggesting otherwise. So what Judge Raslavich was looking at was truly a question of law. His view of the law is entitled to, you know, some weight. He's a bankruptcy judge. But Judge Rob Reno looked at his view of the law. It's subject to plenary review. And your view of the law is ultimately controlling unless the Supreme Court weighs in on the issue. But this is – what is before this court, what was before Judge Raslavich, and what was before Judge Rob Reno is only a question of law. It's whether the bankruptcy code requires credit bidding any time a sale of assets occurs under a plan. And the answer to that question is no, it does not. That's what Judge Rob Reno found because the statutory language doesn't get you there. But doesn't his ultimate decision also tie into his finding on the business judgment question that under this proposed sale, credit bidding should be permitted? Right. There was absolutely no basis for him to make that finding because there was no record. It was submitted as a question of law. I represented the agreement of the parties on the record at the outset of the hearing. We made no record. We called no witnesses. We introduced no evidence. Do you disagree that there was no – or do you believe there was no factual finding? There was no factual finding. What there was was commentary by Judge Raslavich. He hasn't had a trial on anything yet. All he's listened to is colloquy of lawyers. There's been no evidence submitted to Judge Raslavich. What was before him was simply a question of law, and that's what he decided. That's what Judge Rob Reno decided, and it's the only thing that you should decide. The – if we were to go your way, what would be the consequences of that? The argument made is that you will see the death knell of plans proposing sales under – free and clear under two little eyes. Yeah, that won't happen. The consequence of your going our way and deciding consistently with the Fifth Circuit so there's no circuit split, the consequence has already occurred because the consequence happened after the Fifth Circuit decision. What's happening is that lenders are accommodating this issue. They're looking at it, and in every filing you're going to see, whether it's in the Southern District or in Delaware or the occasional filing in the Eastern District of Pennsylvania, you're going to see lenders dealing with this issue up front either in dip loan documents or in their cash collateral stipulations so that debtors will be restricted from doing what we're doing here. That didn't happen in this case, but it will have, I think, little effect. And by the way, sub two is a much easier standard. If I'm just selling assets in a Chapter 11 plan, I'd much rather go under sub two because I don't need to show indubitable equivalence. That's a lot of work to show indubitable equivalence. I might not be able to get there. So it doesn't rule out sub two at all. So it really goes back to your point that the practical point you answered in response to Judge Smith's question is that you need money desperately, and you need to go under something that allows you at least the opportunity to attempt to get it. That's right. We have the flexibility to do that as long as we can show indubitable equivalence. You go to my truck example. If I can sell a truck free and clear, even though it's subject to liens with no creditors, I want the cash, I'm going to keep the cash, but I can put the lien on something else that's equal to or greater, I should be able to do that without imposing a credit bid requirement on it. It is a substitute collateral doctrine, but you can look at our plan to substitute collateral. We could just say this big pot of cash is substitute collateral that's equal to or greater than the value of the collateral they started with, which, by the way, and I'll close with this. I know I'm out of time. Again, if I may, just one last point. As Judge Becker would say, you're on our time. Thank you, Your Honor, and I really appreciate your indulgence. But let's not underestimate the impact of cash. Some people would say, well, you're buying them out at a low point in the market, and this collateral might appreciate, and you're getting cash at a low point in the market. Well, the cash is actually more valuable because the cash gives lenders optionality. They can redeploy it. They can relend it to a more profitable business. If they really like newspapers, they can invest it in a public newspaper. There's lots of things you can do with cash to achieve the same appreciation. We could look at our plan as substituting our pot of cash as collateral, just like my example of the two trucks. And if that works, if that gets us to indubitable equivalence, then that's all Congress requires. And this Court shouldn't write in a new requirement that Congress didn't put there. So you're saying that whatever somebody, in effect, you're forcing, if you get your way, the secured lenders have to come in and they have to put up cash if they want a bid, which, in effect, they're not going to do. Well, no, that's not true. They may well do that, and I hope they would do it because they get back the same day. Our sale closes on the effective date the same day they get their cash. If somebody's put out $275 million, which is now, with interest, equals $318 million and counting, why in the world would they want to put out cash to throw good money on top of that? Only if they want to own the asset and they get it right back the same day. Is there some, according to Brubaker, leakage? You know, it depends on how they structure it. That's up to them. I mean, it's a very simple structure. If they're going to credit bid their 38 lenders, the credit bid rights are all going to be assigned to a new entity. They could create a new entity. Citizens Bank could loan it money. What will the plan propose? Pay Itself Act actually comes out. Will dollar for dollar go to them or what? It would go to them. It would if they structured it properly. I mean, I can tell them how to structure it. It's not that hard. As I said, you could structure it the same way they structure a credit bid and just have Citizens Bank lend whatever the cash bid is on the day of closing to that entity. They'd wire it in, and then the wire would come back in an equal to or greater amount if we've proven individual equivalence because, remember, the plan requires us to pay them equal to or greater than the value of that bid. So they will get the cash back the same day. And that's why I think, to some degree, this is all much ado about nothing. It's very important from our standpoint to try to craft an option on a level playing field to bring bidders into an industry where it's hard to get bidders involved. But it's a level playing field consonant with the code, and we're trying to figure out what the code requires or does not require. That's absolutely right. And the key to that is the word or and the meaning of indubitable equivalence. Thank you. Thank you very much. Yeah, absolutely. You can clock us. Your Honor, may I proceed? I have three very quick points to make on rebuttal, all of which are in response to questions raised by the panel. The first I'll address is, Your Honor, the last point that was made with respect to does the cash come back. And, in fact, the way the plan is structured is that the cash would be distributed, if there is a cash option, pro rata to the secured lenders. We are talking about a syndicate of lenders, 38 lenders in total, so that to the extent that less than 100 percent of the lenders choose to. How much trading has there been among those 38, do you know? I do not know, Your Honor. Has there been any significant trading? I don't believe it has been terribly significant, no. I think there's been some movement within lenders, but in terms of new lenders coming in, I don't think it's been very significant. But, Your Honor, to the extent any of those lenders decide whether, for structural reasons, they are not able to credit bid, which is certainly the case with some of the funds, then those that do participate in a cash bid would, in fact, be putting more cash at risk. So it is not simply a question of lay out cash on one day and get it back the next. Your Honor, the second point I would like to address is Judge Smith's question, what is the impact of credit bidding here? And there's a three-part answer to that. First, we have a constitutionally protected property interest in this contract. By the way, I don't think Fowler on language would allow impact in that context. That's okay. Maybe the third edition would, which is maybe why I don't like it. Your Honor, we have a constitutionally protected interest in our collateral and simply cannot be required to put up more cash in addition to the $275 million and counting that has already been put up in order to protect that collateral. The second part of that answer, Mr. McMichael talked about the need that the debtor has for fresh capital. To be clear, a requirement in these bid procedures to even have a qualified bid is to have an exit facility of, I believe it's at least $25 million. And so we, the secured lenders, if we are able to credit bid, we'll have to provide evidence to the debtor to even get a seat at the table in the auction that we can put up that $25 million exit facility. Third part to that question, which is the suggestion by Mr. McMichael that a credit bid would chill the bidding. That is simply nowhere to be found in the four cause exceptions to credit bidding under 363K. There is not a case that stands for the proposition that a credit bid will chill bidding and should for that reason be disallowed. And indeed, we think that such a holding would be directly contrary to this court's ruling in submicron. Last point, Your Honor, which is in response to the question of why should the court decide this issue now and not at confirmation. And again, a three-part answer. First, the debtors chose this path. It is their motion to approve bid procedures. This was, it's right for the court to rule on it now. We are not at planned confirmation. Second, considerations of judicial efficiency, we think, weigh heavily in favor of deciding the issue now. The bid procedures as drafted, we think, will lead to a patently unconfirmable plan. Just as there is well-established jurisprudence for the proposition that a disclosure statement that describes a patently unconfirmable plan will not be approved because it would be a waste to go try to confirm that plan, so too should it be the case here that bid procedures that describe a patently unconfirmable sale in a plan should not be approved. Third point, the secured lenders will suffer irreparable harm if the auction proceeds without credit bidding. This is the argument that we made in our motion to this court to stay the auction. We argued that once bids are unsealed, that is simply not something that can be repeated. For a bidder, assuming that third parties are indeed attracted to the auction, to reveal the increments in which they are prepared to bid, to reveal how high they are prepared to go in the auction, that's like replaying a hand of poker with one's cards face up. It simply can't be done. And the result will be, if we try to do it again, a diminution in value that will come into the estate. And in fact, the argument about chilling the bid is exactly the opposite. Nothing would chill bidding more than conducting an auction where anybody who shows up knows with 100 percent certainty that the result of that auction is going to be limited. Thank you. Thank you. I thank, on behalf of the panel, all counsel for extremely well presented briefs and oral argument. We would ask that after oral argument that you get together with the clerk's office and have a transcript ordered of this oral argument, split the costs half to the debtor, half to the appellants. And also, if we could, within the next few minutes, have the courtroom cleared because we're going to be conferring with Judge Smith shortly via video conference. So with that, again, thank you very much for appearing. Thank you.